UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CARE.STAT! INC d/b/a CareRev,

    Plaintiff,

v.

                                                              Case No. 25-cv-0673-bhl

LITEHOUSE HEALTH WI, LLC,
LITEHOUSE HEALTH E WA, LLC,
DAVID HEATH, HAAKON MIDNESS,
ALYSSA ZOFFER and ALISON HENIGE,

    Defendants.

---

## ORDER

---

      Plaintiff Care.Stat! Inc., d/b/a CareRev, alleges that four of its former employees, Defendants David Heath, Haakon Midness, Alyssa Zoffer, and Alison Henige, misappropriated its confidential information and trade secrets for the benefit of their new employers, Defendants Litehouse Health WI, LLC and Litehouse Health E WA, LLC. CareRev asserts claims for: (1) breach of contract; (2) tortious interference of contract; (3) tortious interference with a prospective contract; (4) violations of Wis. Stat. §134.01; (5) violations of the Wisconsin Uniform Trade Secrets Act (WUTSA), Wis. Stat. §134.90; (6) violations of the Defend Trade Secrets Act (DTSA), 18 U.S.C. §§1831–1839; and (7) unfair competition. (ECF No. 1 ¶¶74–124.) Defendants seek dismissal of all seven claims. (ECF No. 13.) Because CareRev has adequately pleaded its claims, with the exception of its Wis. Stat. §134.01 claim, Defendants' motion will be granted in part and denied in part.

# FACTUAL ALLEGATIONS[1]

## 1. The Parties

Founded in 2015, Plaintiff CareRev is a technology corporation that offers a software-based healthcare marketplace platform to connect healthcare facilities and qualified healthcare professionals. (ECF No. 1 ¶¶1, 10.)

Defendant Litehouse Health WI, LLC is a Wisconsin limited liability company, and its sole member is Defendant Heath, CareRev's former Vice President of Growth & Strategy. (*Id.*¶¶2, 22.) Defendant Litehouse Health E WA, LLC is a Washington limited liability company, and its sole member is also Heath. (*Id.* ¶3.) Both companies were established by Heath in 2023. (*Id.* ¶¶22, 66.) The two entities are jointly considered "Litehouse." (*Id.* at 1.) Lighthouse is a competitor that offers the same services as CareRev. (*Id.* ¶23.) Defendants Midness, Zoffer, and Henige are three former-CareRev employees that Litehouse, through Heath, solicited and hired. (*Id.* ¶¶39, 45, 47, 53, 54, 59, 67.)

## 2. CareRev's Business and Confidential Information

CareRev created a software program that bridges the gap between healthcare facilities, such as hospitals, and qualified healthcare professionals, such as nurses. Using CareRev's program, healthcare facilities can post available shifts, including the time, location, specialty, and rate. (*Id.* ¶10.) Healthcare professionals can search, view, and claim shifts they are qualified for at healthcare facilities, thus allowing healthcare professionals a flexible opportunity to choose where and when to work. (*Id.* ¶¶10–11.) Before a healthcare professional can use the program, however, he or she must be screened and approved. (*Id.* ¶10.)

CareRev's screening process meets standards set by federal and state laws and regulations. (*Id.* ¶12.) Its screening process is certified by the largest and most reputable healthcare certifying body in the United States, and by maintaining these credentials, CareRev protects its goodwill and reputation within the market. (*Id.* ¶¶16–17.) Considerable time, money, and resources were used to develop the process. (*Id.* ¶¶12–15.) Accordingly, CareRev takes care to keep its contracts, as well as its technology and screening process, confidential and unavailable to the general public. (*Id.* ¶¶20–21.)

---

[1] These factual allegations are derived from CareRev's complaint, (ECF No. 1), the allegations in which are presumed true when considering a motion to dismiss, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

CareRev closely guards its confidential information. It requires employees to sign agreements containing confidentiality covenants; requires employees to maintain confidentiality before and after employment; restricts access to computerized information; prohibits unauthorized removal of company information; restricts company information based on a "need to know" basis; and enters non-disclosure covenants with customers. (*Id.* ¶62.)

### 3. CareRev's Employment of the Individual Defendants

On May 3, 2021, CareRev hired Heath as its Vice President of Growth & Development, a role that required him to develop new client business and strengthen existing client relationships. (*Id.* ¶27.) In Heath's role, he developed and accessed CareRev's contracts, offers, pricing, identification and credentialing process, and business plans for growth. (*Id.* ¶37.) He also had access to the personal information for healthcare professionals utilizing CareRev's services. (*Id.*) Accordingly, as a condition of Heath's employment, he signed an agreement containing restrictions about the use and disclosure of CareRev's self-defined confidential information. (*Id.* ¶¶28–29.) The agreement contained a clause prohibiting Heath from, both during and after employment, "disclos[ing] to any person, firm, corporation or other entity . . . any Confidential Information" that he obtained in the course of his employment, except for the benefit of CareRev. (*Id.* ¶29.) Its confidential information includes its contracts and pricing as well as its "information relating to" CareRev's "employees, consultants, customers, and others." (*Id.* ¶¶30–31.) On April 3, 2023, Heath's employment with CareRev terminated. (*Id.* ¶38.)

On May 3, 2021, CareRev hired Midness as its Vice President, Growth. (*Id.* ¶39.) Before beginning employment, he signed confidentiality agreements like those signed by Heath. (*Id.* ¶¶40–41.) In March 2023, CareRev promoted Midness to Senior Vice President, and, at the same time, Midness joined CareRev's Executive Leadership Team. (*Id.* ¶39.) These roles gave him access to CareRev's contracts, offers, relationships with current and prospective clients, client information, pricing, and more. (*Id.* ¶¶39, 42.) For example, in Midness's role, he spearheaded negotiations with a large healthcare facility in Wisconsin ("Key Client 1"). (*Id.* ¶43.) He is thus aware that Key Client 1's contract prohibits it from divulging the contact information for healthcare professionals using CareRev's services and that the contract is not terminable until at least 2026. (*Id.*) On October 31, 2023, Midness's contract with CareRev terminated. (*Id.* ¶45.)

On October 11, 2021, CareRev hired Zoffer as an Account Manager. (*Id.* ¶47.) She also signed confidentiality agreements. (*Id.* ¶¶48–49.) CareRev promoted Zoffer several times, with

her last title being Vice President of Client Success. (*Id.* ¶¶47, 53.) Zoffer developed and accessed CareRev's confidential and trade secret information in her role. (*Id.* ¶50.) While at CareRev, Zoffer knew of the negotiations, contract, and business dealings with CareRev Key Client 1. (*Id.* ¶51.) She also spearheaded negotiations with another large healthcare facility in Wisconsin ("Key Client 2"). (*Id.*) Zoffer knows that Key Client 1 and Key Client 2 are prohibited from divulging the contact information of the healthcare professionals who use CareRev to any third party. (*Id.*) On November 30, 2023, Zoffer's CareRev employment terminated. (*Id.* ¶53.)

On June 2, 2022, CareRev hired Henige as Director of Clinical Solutions, a role in which she developed and maintained CareRev client relationships, including the relationship with Key Client 1. (*Id.* ¶54.) Henige also signed confidentiality agreements, like the other employee-Defendants. (*Id.* ¶¶55–56.) During her time with CareRev, Henige accessed and knew of the negotiations, contract, and business dealings between CareRev and Key Client 1. (*Id.* ¶57.) Like Midness and Zoffer, Henige knows that Key Client 1 is prohibited from divulging the contact information of the healthcare professionals who use CareRev to any third party. (*Id.*) On January 15, 2024, Henige's CareRev employment terminated. (*Id.* ¶59.)

### 4. Litehouse and Its Employment of the Individual Defendants

Litehouse offers the same services as CareRev. (*Id.* ¶23.) Yet it did not develop its own client base; it took CareRev's clients instead, through the actions of former CareRev employees, Heath, Midness, Zoffer, and Henige. (*Id.* ¶¶24–25, 67–68.) In the months following the termination of their CareRev employment, they disclosed and misused CareRev's confidential information to access CareRev's healthcare facilities and professionals that the four employees had worked with during their tenure at CareRev. (*Id.* ¶¶68–69.) Specifically, the four former CareRev employees solicited Key Client 1 to leave CareRev in favor of Litehouse. (*Id.* ¶68.) Litehouse also emailed certain healthcare professionals, invited them to join its platform, noted that it was the new staffing provider for Key Client 1, and informed the professionals that it would be taking over Key Client 2 soon. (*Id.* ¶70.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint must contain a "short and plain statement of the claim showing that

the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must do more, however, than "recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint survives a 12(b)(6) motion when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). The complaint will be dismissed if it fails to allege sufficient facts to state a claim on which relief may be granted. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

## ANALYSIS

Defendants move to dismiss all seven of CareRev's claims. The motion is largely premised on CareRev's failure to provide more factually detailed allegations. This criticism is misplaced, because that is not the pleading standard set by the Federal Rules or the standard applicable on a Rule 12(b)(6) motion. CareRev need only provide Defendants with adequate notice of its claims. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("Rule [8(a)] reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court.") (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). Having done that, CareRev is entitled to take discovery to develop factual support for its allegations, and Defendants will have the chance to establish that the claims are without a factual basis. Resolving factual issues like these at the motion to dismiss stage is inappropriate. Accordingly, Defendants' motion will be denied with respect to all claims except CareRev's claim under Wis. Stat. §134.01. Because CareRev's pleadings do not allege and, in fact, undercut an inference of malice that claim will be dismissed.

**I.    CareRev Has Adequately Pleaded a Breach of Contract Claim.**

CareRev's first claim asserts breaches of contract by all four individual defendants. (ECF No. 1 ¶74.) CareRev maintains that Heath breached his obligations by soliciting and hiring Midness, Zoffer, and Henige. (*Id.* ¶67.) And it further maintains that all four former CareRev employees breached their confidentiality agreements by using confidential information, as defined

in the agreements, to move CareRev's clients and healthcare professionals to Litehouse. (*Id.* ¶¶74–79.)

The parties agree that this claim is governed by California law based on the choice of law provisions in each contract. (*See* ECF No. 1-1 at 7 (providing that California law governs the contract)); *see also Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, 956 F.3d 950, 956 (7th Cir. 2020) (explaining that Wisconsin generally honors stipulations as to choice of law unless they conflict with public policy); (ECF No. 17 at 5–6 (agreeing with Defendants that California law applies to the breach of contract claim)). Under California law, a breach of contract has four elements: "(1) the existence of [a] contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011).

Defendants argue that CareRev's breach of contract claim fails because CareRev has only alleged that employee-Defendants will inevitably breach their contracts, not that employee-Defendants have actually breached their contracts. (*See* ECF No. 14 at 17–18.) In response, CareRev maintains that it pleaded a breach by alleging that the employee-Defendants disclosed and misused its confidential information by liaising with its clients, such as Key Client 1 and Key Client 2, and the healthcare professionals that the employee-Defendants had knowledge of only because of their CareRev employment. (ECF No. 18 at 11–12 (citing ECF No. 1 ¶¶66–73).) Because the allegations are sufficient to establish all four of the required elements, as CareRev maintains, the complaint alleges a breach of contract.

The complaint alleges that the four employee-Defendants breached their agreements by using CareRev's confidential information to move healthcare facilities and healthcare professionals from CareRev to Litehouse. (ECF No. 1 ¶78.) The confidentiality agreements signed by all four employee-Defendants cover information concerning CareRev's contracts, pricing, employees, consultants, customers, and others. (*Id.* ¶30–31.) All four employees had access to CareRev's contract and pricing information. (*Id.* ¶¶37, 42, 50, 57.) During their time at CareRev, the employees worked closely together. (*Id.* ¶¶42, 52, 58.) Midness, Zoffer, and Henige had access to CareRev's contracts for Key Client 1 and/or Key Client 2. (*Id.* ¶¶43–44, 51, 54, 57.) All four employees then left CareRev to work at Litehouse, and Key Client 1 (and potentially Key Client 2) subsequently moved business to Litehouse. (*Id.* ¶¶67–68, 70.) Drawing reasonable inferences in favor of CareRev, the complaint alleges that the employee-Defendants used their

intimate knowledge of CareRev's contracts and pricing to offer a better contract to induce Key Clients 1 and 2 to move business to Litehouse. *See Iqbal*, 556 U.S. at 678 (at the motion to dismiss stage, the Court makes reasonable inferences in favor of the plaintiff). If proved true, this could be a violation of the employees' confidentiality agreements.

The complaint also alleges that Heath, Midness, and Zoffer had access to CareRev's identification of qualified healthcare professionals, along with those professionals' personal information. (ECF No. 1 ¶¶37, 42, 50.) Once the employee-Defendants left for Litehouse, the complaint alleges they reached out to the qualified healthcare professionals to move business from CareRev to Litehouse. (*Id.* ¶¶69–70.) Again, drawing reasonable inferences in favor of CareRev, *see Iqbal*, 556 U.S. at 678, "customers and others" (which is protected confidential information) could include healthcare professionals, (*see* ECF No. 1 ¶31). If the contract is interpreted this way, reaching out to those individuals to benefit Litehouse could be a breach of contract. Accordingly, CareRev has stated a claim for breach of contract.

Defendants complain that CareRev does not detail the specific confidential information that was taken and therefore fails to provide proper notice of its claims. (ECF No. 14 at 15–16.) Defendants understate the contents of the complaint and overstate the applicable pleading requirements. The complaint alleges that CareRev's contracts, pricing, and a list of healthcare professionals were taken from it in violation of the confidentiality agreements. (ECF No. 1 ¶¶30–31, 67–68, 70.) While Defendants complain that CareRev fails to offer more specifics, such as when or how the confidential information was disclosed, (ECF No. 14 at 18), Rule 8(a) does not require this level of detail. Because CareRev has put the Defendants on notice of its breach of contract claim, it has satisfied its pleading obligations. *See Brooks*, 578 F.3d at 581.

## II. CareRev Has Adequately Pleaded Its Common Law Tort Claims.

CareRev asserts three common law tort claims. Its second and third claims allege tortious interference with contract and tortious interference with prospective contract. (ECF No. 1 ¶¶80–95.) CareRev's seventh claim is for unfair competition. (ECF No. 1 ¶¶120–124.) Defendants insist these claims are governed by California law and has filed a separate motion to apply that law. (ECF No. 15.) They also argue that CareRev has failed to adequately plead all three causes of action. (ECF No. 14 at 1.)

### A. Because There Is No Difference Between Wisconsin and California Law, Defendants' Choice of Law Motion Will Be Denied.

Defendants' choice of law motion is unnecessary. Despite their attempt to make this a major issue, the differences between California and Wisconsin law on these claims is either non-existent or immaterial. Accordingly, Defendants' motion will be denied.

In exercising diversity jurisdiction over state-law claims, federal courts apply the choice-of-law rules of the state in which it sits. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020). Because this Court is in Wisconsin, Wisconsin choice-of-law rules apply. Defendants first maintain that California law applies to all of CareRev's common law claims because the parties' agreements provide for its application to the breach of contract claim. (ECF No. 15 at 9.) This is wrong under Wisconsin choice of law rules. Wisconsin recognizes dépeçage, a principle that "cut[s] up a case into individual issues, each subject to a separate choice-of-law analysis." *Ruiz v. Blentech Corp.*, 89 F.3d 320, 324 n.1 (7th Cir. 1996). While Defendants cite a twenty-year old case from this district, *see Boomsma v. Star Transportation, Inc.*, 202 F.Supp.2d 869, 878 (E.D. Wis. 2002), which apparently declined to apply dépeçage in a situation where tort claims against defendants of different domiciles were "inextricably intertwined," the Court declines to adopt that approach. *Boomsma* is not precedential, and neither Wisconsin courts nor the Seventh Circuit have adopted its analysis. Moreover, none of the relevant facts (different domiciles of defendants resulting in different damage caps) that led the Court to adopt the approach in *Boomsma* are present in this case. *See id.* Instead, the Court will consider each claim on its own, as required by Wisconsin law.

Under Wisconsin's established methodology, the first step is determining whether there is a direct conflict between Wisconsin and California law for each claim. *Waranka v. Wadena Ins. Co.*, 832 N.W.2d 133, 138 (Wis. Ct. App. 2013) (citing *Sharp ex rel. Gordon v. Case Corp.*, 595 N.W.2d 380, 384 (Wis. 1999)). If there is no conflict, the analysis ends, and Wisconsin law applies. *Id*. That is the case here as to all three common law torts.

The elements of CareRev's tortious interference with contract and tortious interference with a prospective contract are the same under both Wisconsin and California law. Under Wisconsin law, these claims require allegations that: (1) the plaintiff had a contract or a prospective contract with a third party; (2) the defendant interfered with that relationship; (3) interference by the defendant was intentional; (4) there was a causal connection between the interference and

damages; and (5) the defendant was not justified or privileged to interfere. *Briesemeister v. Lehner*, 720 N.W.2d 531, 542 (Wis. Ct. App. 2006). In California, a tortious interference of contract requires allegations of (1) a valid contract between the plaintiff and a third party; (2) defendant's knowledge of the contract; (3) an intentional act by defendant designed to induce a breach; (4) a breach of contract; and (5) damages. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). A California claim for tortious interference with a prospective contract is similar, although it requires an allegation that the defendant engaged in wrongful conduct other than the interference itself. *See id*. While phrased differently, the elements of these claims are materially the same.

The same is true for CareRev's unfair competition claim. Wisconsin recognizes two types of unfair competition: one based on misrepresentation and the other based on misappropriation. *See Desclee & Cie., S.A. v. Nemmers*, 190 F.Supp. 381, 386 (E.D. Wis. 1961). Misappropriation cases typically "involve the taking of property in breach of confidence or contract." *Id*. Although Defendants feign ignorance as to what claim CareRev brought, the complaint obviously implicates an unfair competition claim based on misappropriation. (ECF No. 15 at 9; ECF No. 1 ¶¶120–124; ECF No. 17 at 8–9.) A claim of unfair competition for misappropriation requires a plaintiff to plead that (1) the defendant used the plaintiff's product or service; (2) the plaintiff put time, skill, and money into the product or service; (3) the use of the product or service gave the defendant an advantage because the defendant did not put in any time, skill, or money to produce it. *Mercury Record Prods., Inc. v. Economic Consultants, Inc.*, 218 N.W.2d 705, 710 (Wis. 1974). Similarly, California law requires a plaintiff plead facts establishing that (1) the plaintiff invested substantial time, skill, or money into developing its property; (2) the defendant appropriated and used the plaintiff's property at no or little cost; (3) the appropriation was without consent of the plaintiff; and (4) the plaintiff was injured. *See City Sols. v. Clear Channel Commc'ns, Inc.*, 365 F.3d 835, 842 (9th Cir. 2004).

Defendants maintain that California unfair competition claims require that the plaintiff "show either an unlawful, unfair, or fraudulent act or practice; or unfair, deceptive, untrue, or misleading advertising." (ECF No. 15 at 9.) But they cite no case law for this assertion. (*See id.*) In reply, Defendants invoke *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 973 P.2d 527, 547 (Cal. 1999) to argue that California requires an unlawful practice and Wisconsin does not. (ECF No. 20 at 8.) But *Cel-Tech* involved a *statutory* claim for unlawful

competition, not a common law claim, like that alleged by CareRev. *See* 973 P.2d at 547; (ECF No. 1 ¶¶120–124).

Because there is no direct conflict between Wisconsin and California law for the common law claims alleged—tortious interference with contract, tortious interference with prospective contract, or unfair competition—the Court will apply Wisconsin law to all three claims.

### B. CareRev Has Adequately Pleaded All Three Common Law Tort Claims.

#### 1. CareRev's Tortious Interference Claims Are Properly Pleaded.

To state tortious interference with contract and prospective contract claims, CareRev must allege that: (1) it had a contract or a prospective contract with a third party; (2) Defendants interfered with that relationship; (3) interference by Defendants was intentional; (4) there was a causal connection between the interference and damages; (5) Defendants were not justified or privileged to interfere. *See Briesemeister*, 720 N.W.2d at 542.

Defendants insist that CareRev failed to allege any of the five elements. In response, CareRev points to its allegations that (1) Litehouse tortiously interfered with the former CareRev employees' confidentiality agreements; (2) Defendants tortiously interfered with the contract between CareRev and Key Client 1, along with any prospective future contract with Key Client 1; and (3) Defendants tortiously interfered with the prospective contracts with Key Client 2 and healthcare professionals. (ECF No. 1 ¶¶83–84, 90, 92.) The Court agrees that under the notice pleading standard of the Federal Rules, these allegations sufficiently notify Defendants of CareRev's claims.

Defendants argue that CareRev's tortious interference claims fail because it has not identified its contract with Key Client 1 or alleged any specific relationship where there is a strong probability of future economic or business benefit to CareRev. (ECF No. 14 at 28, 31.) But CareRev clearly pleads the existence of a contract between it and Key Client 1, (ECF No. 1 ¶¶43, 51, 84), and Defendants suggestion that it must attach a copy of that contract to state a claim is unsupported in caselaw. If Defendants want to review the contract, they can ask for it in discovery. The Court also agrees that CareRev has adequately pleaded the existence of prospective contracts with Key Clients 1 and 2. (*Id.* ¶¶84, 92.) Defendants' insistence that CareRev needs to list specific clients, along with their nature and number, again misunderstands the requirements of notice pleading.

Defendants next insist that CareRev has not alleged interference, (ECF No. 14 at 29–30), but CareRev responds by pointing to allegations that Defendants misused information they only had because of their former employment with CareRev to unfairly compete with CareRev and take its business, (ECF No. 18 at 14 (citing ECF No. 1 ¶¶42–44, 57–60, 83, 85–86, 92)). These allegations are sufficient at the pleading stage. While Defendants are correct that, to succeed on its claim, CareRev will need evidence that Defendants' actions were improper, s*ee Magnum Radio, Inc. v. Brieske*, 577 N.W.2d 377, 381 (1998), these matters are not for the pleading stage.

Defendants are likewise unconvincing in claiming that CareRev has failed to allege damages and labeling the allegations "conclusory." (ECF No. 14 at 29.) CareRev specifically alleges that the loss of its contracts and prospective contracts resulted in monetary damages, along with the loss of its confidential information, long-standing client relationships, and its goodwill and reputation in the market. (ECF No. 1 ¶¶88, 95.) Defendants' suggestion to the contrary is simply wrong.

### 2. CareRev Has Stated an Unfair Competition Claim.

To survive a motion to dismiss a claim of unfair competition, a plaintiff must plead facts establishing that (1) the defendant used the plaintiff's product or service; (2) the plaintiff put time, skill, and money into the product or service; (3) the use of the product or service gave the defendant an advantage because the defendant did not put any time, skill, or money to produce it. *Mercury Record Prods., Inc.*, 218 N.W.2d at 710. CareRev claims that Defendants conduct in soliciting CareRev's qualified healthcare professionals for the benefit of Litehouse constitutes unfair competition. (ECF No. 1 ¶122.)

Defendants argue that CareRev's claim fails because it has not sufficiently alleged the first and second elements. Defendants argue that a list of healthcare professionals is not a product or service and that there is no allegation that time, labor, and money was spent cultivating the list. (ECF No. 14 at 35–36.) Defendants rely upon *Financial Equipment Co., Inc. v. Silva*, 2010 WL 4782786, at *11 (E.D. Wis. Nov. 17, 2010), in which the Court denied a preliminary injunction after determining that a customer relationship was not a product and, even if it were, the plaintiff had not demonstrated that it expended time, labor, and money in creating its customer relationships. (ECF No. 14 at 35–36.) CareRev responds that it has alleged enough to determine that the healthcare professional list was a product and that it spent time, money, and resources

identifying the list of healthcare professionals as qualified. (ECF No. 18 at 22.) The Court agrees with CareRev.

In *Financial Equipment Co., Inc.*, the "product" at issue was long-lasting relationships. 2010 WL 4782786, at *11. The Court determined that long-lasting relationships are not "products," because they are cultivated by competitors, and were not the sole "product" of the plaintiff. *Id.* And even if the relationships were considered products, there was only a conclusory statement that the plaintiff invested time, labor, and money in creating those relationships. *Id.* That is not the case here. CareRev alleged that it screens and approves all healthcare professionals using its app and that its screening process meets a high standard within the healthcare field. (ECF No. 1 ¶¶10, 12.) Thus, its screening process, which sorts out qualified healthcare professionals from a larger group of general healthcare professionals, was cultivated by CareRev. Further, the list of qualified healthcare professionals using the app is part of the "product" CareRev offers healthcare facilities. Healthcare facilities would have little incentive to pay for an app that connects them with unqualified healthcare professionals. Accordingly, the healthcare professionals *could* be a product in this scenario. Additionally, CareRev alleged that the screening process includes (but is not limited to) background checks, license verification, health and drug screenings, advanced specialty training certificates, and vaccinations. (*Id.* ¶¶13, 15.) That is more than a conclusory assertion, because none of the items within that list are free—these checks require an investment of time, money, and resources. Accordingly, Defendants' motion will be denied as to this claim as well.

**III. CareRev Has Alleged Trade Secrets and Misappropriation Under the WUTSA and DTSA.**

CareRev's fifth and sixth claims are for misappropriation of trade secrets in violation of WUTSA and DTSA. (ECF No. 1 ¶¶101–119.) Both the WUTSA and DTSA prohibit misappropriation of trade secrets, and courts employ the same legal analysis under both pieces of legislation. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 573 (N.D. Ill. 2019) (collecting cases recognizing that the WUTSA and DTSA are interpreted identically). To state a trade secrets claim, CareRev must allege that the information it possessed was a trade secret and that the trade secret was misappropriated. *See Kuryakyn Holdings, LLC v. Ciro, LLC*, 242 F. Supp. 3d 789, 798 (W.D. Wis. 2017); *Minuteman, Inc. v. Alexander*, 434 N.W.2d 773, 777–78 (Wis. 1989). The relevant terms are defined essentially the same under both statutes, and for purposes

of its analysis, the Court will focus on the DTSA definitions. Under the DTSA, trade secrets include any information that "the owner thereof has taken reasonable measures to keep . . . secret," and which "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]" 18 U.S.C. §1839(3). The DTSA defines "misappropriation" as including "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means[.]" 18 U.S.C. §1839(5)(A). Improper means "includes theft, bribery, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means[.]" *Id.* §1839(6)(A). But improper means specifically does not include acquisition by any "lawful means[.]" *Id.* §1839(6)(B). The DTSA also makes clear that unauthorized disclosure or use of another's trade secret is also misappropriation. *Id.* §1839(5)(B).

Defendants maintain that CareRev's misappropriation claims fail because CareRev has not alleged the existence of a specific trade secret. (ECF No. 14 at 22–24.) Defendants contend that CareRev's allegations are too broad, citing *ECT Int'l, Inc. v. Zwerlein*, 597 N.W.2d 479, 482 (Wis. Ct. App. 1999). (ECF No. 14 at 22.) But *ECT Int'l Inc.* was a summary judgment case and thus applied a much different standard. *Compare* Fed. R. Civ. P. 56(a) (setting forth the requirements for summary judgment), *with* Fed R. Civ. P. 8(a) & 12(b)(6) (setting forth the pleading standard and a motion to dismiss for failure to state a claim). At the pleading stage, a plaintiff need not detail the specific trade secrets at issue. *See Sonrai Sys., LLC v. Waste Connections, Inc.*, 658 F.Supp.3d 604, 614 (N.D. Ill. 2023). Because CareRev has described the information in general terms and alleged efforts made to keep the information confidential, it has done enough to put the Court and Defendants on notice of what the alleged trade secrets are. *See AutoMed Techs., Inc. v. Eller*, 160 F.Supp.2d 915, 920 (N.D. Ill. 2001) (citing *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992)).

Defendants also argue that CareRev's trade secrets claims fail because the complaint does not allege "how, when, or where the misappropriation occurred." (ECF No. 14 at 22.) But the case they cite, *ReadyLink Healthcare v. Cotton*, 126 Cal. App. 4th 1006, 1024 (2005), involved the denial of a preliminary injunction, not a motion to dismiss. *Id.* at 1016. A preliminary injunction is a far-reaching power, one where the Court affirmatively stops a party's actions before litigation completes, thus requiring a hearing, evidence, and other safeguards. *See* Fed. R. Civ. P

65(a) (providing procedural rules for a preliminary injunction); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (setting forth the standard for preliminary injunctions). The motion to dismiss standard is entirely different, requiring only that the Court accept well-pleaded allegations as true. *See* Fed. R. Civ. P 8(a); *see also Iqbal*, 556 U.S. at 678 (articulating the pleading standard set forth in Rule 8).

CareRev alleged that its former employees: (1) had access to the above-alleged trade secrets only through their employment at CareRev; (2) formed or were hired by Litehouse, a direct competitor of CareRev; (3) took alleged trade secrets that were not publicly available or easily discoverable; and (4) used the information to move healthcare facilities and healthcare professionals from CareRev to Litehouse's platform. (ECF No. 1 ¶¶22–26, 37, 42, 50, 57, 62–63, 67–68.) Taking these allegations as true, CareRev has pled misappropriation. If proven true, Litehouse's misappropriation would be its acquisition or use of CareRev's trade secrets, because it knew that the former CareRev employees disclosed the information in breach of their confidentiality agreements (thus making it improper means). *See* §1839(5)(A)–(B), (6)(A). And the former CareRev employees misappropriated the trade secrets by disclosing CareRev's trade secrets without authorization. *See* §1839(5)(B). Accordingly, CareRev has stated a claim for misappropriation of trade secrets under the WUTSA and DTSA.

### IV. The Court Will Dismiss CareRev's Claim for Injury to Business Because It Has Not Pled Malice.

CareRev's fourth claim is for injury to business in violation of Wis. Stat. §134.01. (ECF No. 1 ¶¶96–100.) To state a claim under Section 134.01, the complaint must allege "(1) the defendants acted together, (2) with a common purpose to injure the plaintiff's business, (3) with malice, and (4) the acts financially injured the plaintiff." *Virnich v. Vorwald*, 884 N.W.2d 535 (Table), 2016 WL 4016077 (Wis. Ct. App. 2016); Wis. Stat. §134.01. Defendants argue that CareRev failed to allege malice. (ECF No. 14 at 33–34.) They note that malice requires that "the conduct was intended to cause harm for harm's sake," and not for any other purpose. (*Id.* at 34 (quoting *Maleki v. Fine-Lando Clinic Chartered, S.C.*, 469 N.W.2d 629, 634 (1991)).)

CareRev responds that Heath "stood to economically benefit" from the alleged scheme. (ECF No. 18 at 21.) It insists that "Defendants not only wanted to profit . . . but did so using deceptive practices . . . causing harm for harm's sake." (*Id.*) CareRev's argument, that Heath acted for competitive reasons, defeats its claim that he acted out of malice and defeats its Section

134.01 claim. As Defendants point out, malice means "doing a harm malevolently, for the sake of the harm *as an end in itself*, and not merely as a means to some further end legitimately desired." *Aikens v. Wisconsin*, 195 U.S. 194, 203 (1904) (emphasis added); *see also State v. Huegin*, 85 N.W. 1046, 1066 (Wis. 1901); *Maleki*, 469 N.W.2d at 634. When the purpose of the harm is to improve competitive advantage, there is no malicious motive. *Maleki*, 469 N.W.2d at 635.

To withstand a motion to dismiss, a Section 134.01 claim requires that the plaintiff plead facts from which it could plausibly be inferred the defendants *irrationally* wanted to cause harm for the sake of harm. *Virnich v. Vorwald*, 664 F.3d 206, 213–14 (7th Cir. 2011). It is true that CareRev alleges that the Defendants used unsavory practices to financially injure it. But it also alleges that Defendants stood to gain financially from their actions. (ECF No. 1 ¶24 ("Litehouse opted to unlawfully target and/or raid the rigorously screened Healthcare Professionals *for Litehouse's financial gain*." (emphasis added)); *see also* ECF No. 18 at 20–21 ("Defendants . . . wanted to profit . . . .").) If Defendants acted to profit, then they did not irrationally want to cause harm, and thus did not act maliciously. Accordingly, CareRev's claim for injury to business under Section 134.01 will be dismissed.

## CONCLUSION

Defendants' motion to apply California law will be denied because there is no direct conflict between Wisconsin and California for any of CareRev's common law claims. Their motion to dismiss will be granted as to CareRev's claim for injury to business in violation of Wis. Stat. §134.01 but will otherwise be denied. Finally, the Court declines Defendants' request for oral argument. (ECF No. 19 at 15; ECF No. 20 at 13.) The Court hears oral argument at its discretion, *see* Civ. L.R. 7(e), and finds no reason to hold argument here. The applicable law is clear, and CareRev's allegations are not complex.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Defendants' motion to dismiss, ECF No. 13, is **DENIED in part** and **GRANTED in part**. CareRev's claim for injury to business in violation of Wis. Stat. §134.01 is **DISMISSED**. The motion in all other respects is **DENIED**.

**IT IS FURHER ORDERED** that Defendants' motion to apply California law, ECF No. 15, is **DENIED**.

Dated at Milwaukee, Wisconsin on January 30, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge